## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| Sarah Ehekircher, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Case No.   1:22-cv-3322 |
| | ) | |
| United States Swimming, Inc., | ) | |
| Colorado Swimming, Inc., | ) | |
| Mission Aurora Colorado Swim Team, | ) | |
| James Scott MacFarland, | ) | |
| Cherry Creek School District 5, | ) | |
| District Employees 1-50, inclusive, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

Comes now Plaintiff Sarah Ehekircher, by counsel, and for her Complaint for Damages against Defendants, states as follows:

### INTRODUCTION

Sarah Ehekircher is a former student-athlete who excelled in swimming and dreamt of competing in the Olympics. After the death of her mother and subsequent abandonment by her alcoholic father, her coach, James Scott MacFarland, took advantage of her vulnerable state and groomed and emotionally abused her for his own sexual gratification. USA Swimming-certified coach MacFarland coached Sarah for the Mission Viejo (Colorado) (which became the Mission Aurora Colorado Swim Team). McFarland

1

with the full awareness of the Cherry Creek School District had Sarah move into his apartment while she was still a minor.

Coach MacFarland raped Sarah for the first time in the summer of 1986 when she was at swim meet in Southern California. He continued to coerce Sarah into sex, leveraging the lodging he provided her, to induce her to sexually service him. This abuse continued for years, and Sarah carried the emotional scars resulting from the trauma for many more. James Scott MacFarland, USA Swimming, the Mission Aurora Colorado swim team, and the Cherry Creek School District all actively abused and/or failed to act to protect Sarah.

PARTIES

1.      Sarah Ehekircher is a natural person and a citizen of the United States. She currently resides in Seattle, Washington. She may be served through counsel, whose contact information appears below.

2.      Defendant United States Swimming, Inc ("USA Swimming") is a Colorado Corporation, with its principal place of business at 1 Olympic Plaza, Colorado Springs, Colorado 80909. It may be served through its registered agent: InCorp. Services Inc., 36 South 18th Avenue, Brighton, Colorado 80601.

3.      Defendant Colorado Swimming is a Colorado Corporation and can be served via its registered agent, Jackie Stiff, PO Box 904 Eastlake, Colorado 80614. Colorado Swimming's physical address per the Colorado Secretary of State is 14185 Forest Street Thorton, Colorado 80602.

4.      Colorado Swimming is a Local Swim Committee ("LSC") of United States Swimming.

5.      LSC's act for United States in the respective geographic areas, administering swim meets, tracking results, ensuring that only USA Swimming Coaches are permitted on pool deck.

6.      LSC's carry out the business and operations of USA Swimming in their respective geographic areas.

7.      https://www.usaswimming.org/about/lsc-websites is a listing of the respective LSC's across the United States and respective territories.

8.      Colorado Swimming and USA Swimming are insured on the same commercial general liability policies.

9.      Colorado Swimming is a d/b/a of USA Swimming.

10.     Colorado Swimming and USA Swimming are insured on the same sexual abuse insurance policies.

11.     Defendant James Scott MacFarland ("Coach MacFarland") was last known to be living in Houston, Texas coaching at the Magnolia Aquatic Club . His current whereabouts are unknown.

12.     Plaintiff will serve MacFarland via personal service.

13.     Mission Aurora Colorado Swim Team ("MACS") is a Colorado Corporation. It is the successor in interest to the Mission Viejo Swim Club in Colorado. It

may be served through its registered agent, Andrew J. Neimann at 19951 E. Radcliffe Pl, Centennial, CO 80015-5414.

14.     Mission Viejo Colorado, was a swim team that was located in Aurora, Colorado.

15.     In 1989 the Mission Veijo subdivision , no longer wanted the Mission Viejo Swim team to use the Mission Viejo name.

16.     As a result, in 1989 the Mission Viejo Colorado swim team became Mission Aurora Colorado Swim Team .

17.     MACS is d/b/a of USA Swimming.

18.     Cherry Creek School District 5 is a public school district based in western Arapahoe County, Colorado. It may be served through its District Office, at 4700 South Yosemite Street, Greenwood Village, Colorado 80111.

19.     Smoky Hill High School is and was a high school in the Cherry Creek School District.

20.     John Doe School District Employees 1-50 is a placeholder for those Cherry Creek School District 5 employees who identities are yet to be discovered but who knew, or should have known, that School Employee MacFarland was sexually harassing and abusing young students, including Sarah Ehekircher, and who did not report him, intervene, or otherwise take any actions to protect children and youth against him.

## JURISDICTION AND VENUE

21.     This Court has original subject matter jurisdiction of the federal questions presented herein under 28 U.S.C. § 1331 and Title IX of the Education Amendments of 1972.

22.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Ms. Ehekircher's state law claims.

24.     Venue in this Court is proper under 28 U.S.C. § 1391(b), for many of the events or omissions giving rise to these claims arose in this District.

## FACTS

25.     Ms. Ehekircher was born in 1968.

26.     Sarah started swimming at the age of 12.

27.     By the time Sarah was 14, she was one of the top breaststrokers in Colorado.

28.     Except for one semester of her sophomore year of high school when she lived in Ohio, Sarah swam for the Mission Viejo Conquistadores aka Mission Viejo Colorado,

29.     In 1982, when Sarah was 13, her mother died of cancer.

30.     Her father began to struggle with alcoholism when Sarah was in her early teens.

31.     Following her mother's death, swimming became Sarah's outlet and was (initially) a safe place for her emotionally and physically.

32.     Sarah doubled down on her commitment to the sport and her increased dedication resulted in improved performances.

33.     The Mission California Swim team was and is one of the most successful club swim programs in the United States.

34.     At some point in the 1980s, Mission Viejo created a Colorado branch of its swim club, which Sarah joined.

35.     As explained above Mission Viejo – Colorado ("MVC") eventually became Mission Aurora Colorado Swim Team ("MACS").

36.     MACS still operates a club swimming program to this day.

37.     MVC was affiliated with United States Swimming (the National Governing Body or "NGB") and Colorado Swimming (the Local Swimming Committee or "LSC").

38.     Sarah's swim coach at MVC was Coach MacFarland.

39.     At all relevant times, MacFarland was a swim coach certified by Defendant United States Swimming.

40.     Coach MacFarland had been recruited by Mark Schubert to coach the Colorado extension of the Mission Viejo Nadadores program.

41.     Schubert was aware that Coach MacFarland and his other young male assistant coaches had a practice of wearing short running shorts without underwear while stretching girls at Mission Viejo practices.

42.     Coach MacFarland and his USA Swimming-certified peers wore short running shorts ("Dolphin shorts") while stretching girls;

43.      so the girls would have a clear view of their testicles and penises.

44.     Coach MacFarland and other Mission Viejo coaches would stretch their legs on the starting blocks while wearing Dolphin shorts to expose their genitals to the children they coached.

45.     By 1986 USA Swimming, its LSCs, and the member clubs of USA Swimming were not able to purchase commercial general liability insurance on the open insurance market.

46.     By 1986 in order to purchase insurance USA Swimming had to pay "one million dollars, for one million dollars of coverage."

47.     USA Swimming, its LSCs, and member clubs were not able to purchase commercial on the open market because of the high incident of child sexual abuse in USA Swimming[1].

48.     In 1986, USA Swimming, Colorado Swimming and the Mission Viejo Nadadores (now Defendant "MACS")had no policies or procedures prohibiting sexual relations between coaches and the young athletes they coached.

---

[1] Through at least 2020 USA Swimming member clubs purchase their insurance as USA Swimming doing business as the NAME OF CLUB.

49.     USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (now Defendant MACS) did not prohibit sexual relationships between coaches and athletes until 2013.

50.     In 1986, USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (now Defendant MACS)  had no policy prohibiting coaches from living with the children they coached.

51.     In 1986, USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (Now Defendant MACS) had no policy prohibiting male coaches from living with the female minors they coached.

52.     During the 1985-86 school year, MacFarland was Sarah's coach at MVC (now MACS).

53.     Coach MacFarland was aware that Sarah's mother had passed away.

54.     Coach MacFarland began to take an "interest" in Sarah outside of her swimming.

55.     Coach MacFarland asked Sarah personal questions about her home and dating life.

56.     Coach MacFarland knew that Sarah's father was struggling with his wife's death and was drinking excessively.

57.     At all relevant times, Sarah was enrolled in Cherry Creek School District 5 ("Cherry Creek Schools").

58.     At some point Coach MacFarland was an employee of the Cherry Schools

59.     MacFaralnd assisted Mike Mason and Don Hill as a swim coach with the

Cherry Creek School District, coaching in some capacity at Smoky Hill High School.

60.     Cherry Creek Schools had actual knowledge that Sarah was living with

Coach MacFarland when she was a minor.

61.     While a student at Smoky Hill, Scott MacFarland's address was listed on

Sarah's school records.



62.     Cherry Creek Schools knew or should have known that Sarah was not

MacFarland's child.

63.     Chery Creek Schools knew or should have known MacFarlands address.

64.     Cherry Creek rented pool space to MacFarland

65.     MacFarland was a swim coach for Smoky Hill High School

66.     Cherry Creek Schools knew or should have known that MacFarland had no

legal custody over Sarah.

67.     Upon information and belief Cherry Creek Schools did nothing to protect Sarah despite having actual knowledge that she was living with an adult male that was not her father or legal guardian.

68.     The potential harm of an adult male living with a minor female who is not biologically or legally related is obvious.

69.     Cherry Creek Schools had a duty to enact policies and procedures to protect its students.

70.     Cherry Creek Schools breached its duty to protect Sarah.

71.     Coach MacFarland had Sarah move into his one-bedroom apartment in Aurora, Colorado when Sarah was seventeen year old (17) junior in High School.

72.     Despite actual knowledge that Sarah, a student under 18, was living with adult male James Scott MacFarland, Cherry Creek Schools took no actions to protect Sarah.

73.     Coach MacFarland began traveling with Sarah to swim competitions in Colorado and in other states.

74.     Coach MacFarland traveled to swimming competitions with Sarah in the summer of 1986.

75.     Coach MacFarland took no steps to conceal his "relationship" with Sarah.

76.     Coach MacFarlans "relationship" with Sarah was openly discussed among employees at Smoky Hill.

77.     Coach MacFarland and Sarah traveled, at MacFarland's expense, to theIrvine AA (older)[2] swim meet in Irvine, California in July 1986.

78.     For the first part of the meet, Sarah stayed with Shannon Hair, another junior athlete.

79.     When Shannon was done competing, she left the meet and Coach MacFarland moved into the room that Sarah still occupied.

80.     At the hotel room they shared in Irvine, California, Coach MacFarland raped Sarah for the first time; she was 17.

81.     The age of consent in California (in 1986 and today) is 18.

82.     Sarah did not turn 18 until December 1986.

83.     After the meet in Irvine concluded, Sarah and Coach MacFarland traveled to a meet in Austin, Texas.

84.     Sarah and Coach MacFarland had sexual intercourse in Texas in the summer of 1986.

85.     Sarah and Coach MacFarland had sex in his car in Arizona in the summer of 1986.

86.     Bob and Kathy Gillet coached a USA Swimming club, Arizona Sports Ranch, in Paradise Valley, Arizona.

---

[2] AA was a minimum time standard needed to enter the meet and older referred to athletes over the age of 13.

87.     Sarah and the three prominent USA Swimming Coaches (Scott, Bob, and Kathy) traveled on to Arizona where Sarah and Scott shared a bed at the Gillet family home in Phoenix, Arizona.

88.     Sarah and Coach MacFarland had sex in the Gillett's home in Paradise Valley, Arizona in the summer of 1986.

89.     Bob and Kathy Gillett knew how old Sarah was in the summer of 1986.

90.     Bob and Kathy Gillett knew Sarah was not 18 years old in the summer of 1986.

91.     In 1986, the age of consent in Arizona was 18 years old (as it is today).

92.     Sarah and Scott traveled to Las Vegas, Nevada in the summer of 1986 with USA Swimming coaches, Bob and Kathy Gillet.

93.     Sarah and Scott shared a hotel room in Las Vegas; however, the age of consent in Nevada in 1986 was 16.

94.     Upon returning to Colorado for the start of school, Sarah was coerced into sexual acts Coach MacFarland countless times at his apartment between August 1986 and her graduation in the spring of 1987.

95.     The MACS Swim Team, then known as Mission Viejo Colorado was aware that Sarah was living with Coach MacFarlad before she went to Irvine in the summer of 1986.

96.     The MACS Swim Team then known as Mission Viejo Colorado discussed Sarah and Scott living together at board meetings in 1986 before Sarah traveled to Irvine with Coach MacFarland.

97.     The MACS Swim Team, then known as Mission Viejo Colorado was aware that Sarah was traveling to California with Coach MacFarland in the summer of 1986

98.     It was common knowledge on the MACS Swim Team that Coach MacFarland and Sarah were living together in 1986.

99.     It was commonly known in the MACS Swim program that Sarah was a minor in 1986

100.    The MACS Swim Team had no policies or procedures involving appropriate coach -minor athlete relationships;

101.    Including no policies prohibiting

  a.  Coach – Athlete sex

  b.  Coach – sex with minors

  c.  Adult male coaches sharing hotel rooms with minors

  d.  Coaches from living with minor members of they coached.

102.    The culture of USA Swimming and its LSCs including Colorado Swimming have long enabled and turned a blind eye to adult male coaches having sex with the young girls they coach.

103.    As reported by the Orange County Register in February 2018, literally hundreds of USA Swimming coaches have engaged in sexual relationships with the young athletes they coached since the organization's inception in 1978.[3]

---

[3] Scott Reid, *100s of USA Swimmers Were Abused for Decades,* The Orange County Reg., Feb. 16, 2018, https://www.ocregister.com/2018/02/16/investigation-usa-swimming-ignored-sexual-abuse-for-decades/.

104.    It was not noteworthy or unusual that Coach MacFarland was having sex with a minor swimmer.

105.    It was this very culture that allowed Coach MacFarland to openly "date" and live with Sarah in 1986.

106.    Sarah and Scott had sex in Arizona, California, Texas, and Nevada before returning to Colorado for the start of Sarah's senior year of high school in 1986.

107.    Coach MacFarland lived with Sarah in his one-bedroom apartment while she was a high school student

108.    Cherry Creek Schools knew that Sarah was living with Coach MacFarland, while Sarah was a Smoky Hill student.

109.    Cherry Creek Schools took no steps to verify if Scott MacFarland was indeed Sarah's guardian.

110.    Coach MacFarland continued emotionally and sexually abusing Sarah.

111.    Coach MacFarland kept a scale in his kitchen and insisted Sarah weigh before she ate; he regularly forced her to ride a stationary bike for at least two hours after swim practice.

112.    MacFarland's address at E Stanford Ave, Aurora, CO 80015 is listed on Sarah's Smoky Hill school records.

113.    In reality, Coach MacFarland was not Sarah's "guardian;" he was her rapist and abuser.

114.    In USA Swimming, Colorado Swimming, and MACS social circles, Sarah and Coach MacFarland openly "dated."

115.     Staff and employees, particularly in the athletic department knew that Coach McFarland and Sarah were dating.

116.     MacFarland constantly demanded sexual services from Sarah.

117.     MacFarland leveraged the fact he was providing food and shelter to Sarah, who had nowhere else to go, in exchange for sexual services.

118.     MacFarland became jealous when Sarah received attention from peers her age.

119.     MacFarland prohibited Sarah from engaging in normal youth activities, like attending dances and dating her peers.

120.     Coach MacFarland refused to let Sarah take part in high school milestones, such as having her senior pictures taken.

121.     Coach MacFarland would spend hours video-taping Sarah, and then force her to spend hours watching herself on VHS with him.

122.     Coach MacFarland would often videotape Sarah swimming alone for hours, and then force her to watch the tapes of herself swimming while he critiqued every stroke, kick, and turn.

123.     These sessions would sometimes last up to six hours.

124.     Despite enduring constant sexual and emotional abuse from her USA Swimming certified-coach while still a teenager, Sarah continued to swim well during her senior of high school.

125.     By the end of her senior year in May 1987, Sarah had not committed to a college.

126.    Sarah moved to San Diego in May 1987 and swam for Rick Shipperd.

127.    In July 1987, Sarah returned to Colorado and resumed swimming for Mission Viejo and Coach MacFarland.

128.    Sarah swam for the Mission Viejo Colorado at USA Swimming Junior Nationals in Mission Viejo, California in July 1987.

129.    As a result of her performance at that meet, Sarah was offered a scholarship to the University of Arkansas.

130.    Sarah chose to attend the University of Arkansas.

131.    After she relocated to Fayetteville, Arkansas, Coach MacFarland constantly harassed Sarah, demanding to know her whereabouts and with whom she was spending her time.

132.    When Sarah came home for Thanksgiving, Coach MacFarland coerced Sarah into sex.

133.    Scott impregnated Sarah for the first time around the end of November 1987.

134.    She was 18 years old.

135.    Sarah aborted the pregnancy in January 1988.

136.    Coach MacFarland continued to pressure and harass Sarah through the remainder of her freshman year at the University of Arkansas.

137.    Sarah left school during the beginning of her second semester, and never returned.

138.    Sarah left the University of Arkansas and moved back to Colorado to live with Coach MacFarland.

139.    Sarah retired from competitive swimming in 1993.

140.    Sarah was impregnated twice within eight months of the first abortion.

141.    In 1988 Sarah had two abortions for pregnancy caused by Scott MacFarland.

142.    Sarah last had sex with James Scott MacFarland in 1993.

143.    Sarah's "relationship" with Coach MacFarland has been well known in USA Swimming circles since it started when Sarah was 17.

144.    Numerous times during the last 30+ years, Sarah has made formal and informal complaints to USA Swimming about Coach MacFarland.

145.    In 2010, USA Swimming convened a Board of Review in Dallas, Texas to adjudicate Sarah's allegations against Coach MacFarland.

146.    John Morse, USA Swimming's former counsel, was the "chair" aka "Judge" for the Board of Review.

147.    USA Swimming's outside counsel, Bryan Cave, "prosecuted" Sarah's allegations against James Scott MacFarland.

148.    Bryan Cave also served as USA Swimming counsel defending sexual abuse civil cases across the United States until 2015 or 2016.

149.    Under oath, Sarah testified that James Scott MacFarland first had sex with her in July 1986 at a hotel in Orange County, California.

150.    Under oath, James Scott MacFarland admitted to having a sexual relationship with Sarah when he was her coach but denied having sex with her in California in 1986.

151.    USA Swimming claims they are unable to find meet results from the Irvine meet in 1986 or the meet from Austin in 1986.

152.    USA Swimming's Board of Review included a "jury" of three.

153.    As intended, USA Swimming's Dallas Board of Review found that Sarah and Coach MacFarland's sexual relationship started in the summer of 1987 not the summer of 1986.

154.    USA Swimming or the Center For Safe Sport[4] or both have providedtheinaccurate date of 1987 has commencement of sexual activity between Coach MacFarland and Sarah to law enforcement.

155.    As a result of being raped at a young age and during a vulnerable time, Sarah has suffered extreme emotional distress.

156.    As a result of her emotional distress, Sarah has been hospitalized with depression.

157.    Sarah has made three suicide attempts.

158.    Over the last 30+ years, USA Swimming has contributed to Sarah's distress.

---

[4] The Center for Safe Sport is an organization in Denver, Colorado that is completely reliant on funding from the United States Olympic Committee and National Governing Bodies like United States Swimming. The Center For Safe Sport is designed to "investigate" claims of sexual abuse in Olympic Sports and then mitigate the civil and criminal liability of the USOC and National Governing Bodies upon whom it relies for funding.

159.    USA Swimming has sought to discredit Sarah to protect the reputation of the USA Swimming, the Mission Viejo Swim teams,  Mark Schubert, and to a lesser extent, Coach MacFarland.

160.    USA Swimming has withheld evidence, namely meet results and transcripts from Sarah, to prevent Sarah from proving the allegations underlying this complaint.

161.    Upon information and belief, in 2018 or 2019 the US Center for Safe Sport opened an investigation into Sarah's allegations against James Scott MacFarland.

162.    Upon information and belief, USA Swimming did not provide meet results that could have corroborated Sarah's participation in the 1986 Irvine and Austin swim meets.

163.    The Center for Safe Sport closed its investigation into Coach MacFarland in 2019 for reasons not currently known to Plaintiff.

164.    Upon information and belief USA Swimming or the Center for Safe Sport provided inaccurate information to law enforcement in California.

## CAUSES OF ACTION

### Count 1: Sexual Battery of a Minor - California Law Applies
#### (v. James Scott MacFarland)

165.    Plaintiff hereby incorporates all foregoing paragraphs as though fully recited herein.

166.    At all relevant times, Defendant MacFarland was a USA Swimming approved, certified, and/or registered swim coach for the USA Swimming sanctioned and certified club the Mission Viejo Colorado entrusted with the care of Plaintiff as her

swim coach. MacFarland owed Plaintiff a duty to conduct himself appropriately so as not to inflict harm upon her.  At all relevant times, said Defendant was employed, retained, and/or acting as the agent for USA Swimming, and/or Mission Viejo Colorado

167.    Commencing in or around 1985-86, MacFarland used his position of trust and authority as Plaintiff's coach to groom plaintiff for his sexual gratification and/or committed lewd and lascivious acts upon Plaintiff and/or sexually abused, molested, and impermissibly touched Plaintiff.

168.    As a legal result of the foregoing, Plaintiff was injured in health, strength, and activity, sustaining bodily injuries and shock and injury to her nervous system and person, all of which caused and continue to cause plaintiff great mental, physical and nervous pain and suffering; Plaintiff has thereby sustained damages in an amount to be determined by a jury.

169.    As a further legal result of the conduct of MacFarland, Plaintiff was required to and did employ health care providers for examination, counseling, treatment, and care, and incurred, and will continue in the future to incur, medical and incidental expenses, including counseling costs, the exact amount of which is unknown to Plaintiff at this time.

170.    As a further legal result of the conduct of MacFarland, Plaintiff was prevented from working and/or suffered a loss of earning capacity.  Plaintiff is informed and believes and thereon alleges that her inability to work and/or reduction in his earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning capacity, the exact amount of which is unknown to Plaintiff at this time.

171.    Plaintiff herein anticipates serving upon MacFarland an offer to compromise under Colo. R. Evid. 408 and Colorado Civil Code §13-21-101, and upon such service of said offer, is entitled to interest on the amount of any judgment obtained in favor of Plaintiff, provided said judgment exceeds the amount stated in the said offer, said interest to be computed from the date of service of the said offer to compromise.

172.    The acts of Defendant MacFarland perpetrated upon Plaintiff were intentional, malicious, and/or oppressive, entitling Plaintiff to punitive damages against the said defendant under Colorado Civil Code §13-21-102.

### Count 2: Negligence - California Law Applies
### (v. United States Swimming, Inc. and Colorado Swimming, Inc.)

173.    Plaintiff incorporates all preceding paragraphs as though fully recited herein.

174.    USA Swimming owed Plaintiff a duty to, inter alia, protect her from sexual assault by her coach, employ or retain suitable coaches entrusted to the care of this minor, institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct by coaches, to report to the legal authorities any reasonable suspicion of child abuse, and/or to otherwise conduct themselves with due care to avoid injuring Plaintiff.

175.    USA Swimming breached said duties by, inter alia, failing to report inappropriate behaviors to the authorities for proper investigation, failing to intervene on Plaintiff's behalf, and/or failing to implement and/or enforce proper policies and procedures for the protection of minor swimmers.

176.   As a legal result of USA Swimming's acts and/or omissions, Plaintiff sustained injuries and damages as hereinbefore alleged.

## Count 3: Negligence - California Law Applies
### (v. MVC/MACS)

177.   Plaintiff incorporates all preceding paragraphs as though fully recited herein.

178.   Mission Aurora Swim Team (formerly Mission Viejo – Colorado) owed Plaintiff a duty to, inter alia, protect her from sexual assault by her coach, employ or retain suitable coaches entrusted to the care of this minor, institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct by coaches, to report to the legal authorities any reasonable suspicion of child abuse, and/or to otherwise conduct themselves with due care to avoid injuring Plaintiff.

179.   Mission Aurora Swim Team (formerly Mission Viejo – Colorado) breached said duties by, inter alia, failing to report inappropriate behaviors to the authorities for proper investigation, failing to intervene on Plaintiff's behalf, and/or failing to implement and/or enforce proper policies and procedures for the protection of minor swimmers.

180.   As a legal result of Mission Aurora Swim Team's (formerly Mission Viejo – Colorado's) acts and/or omissions, Plaintiff sustained injuries and damages as hereinbefore alleged.

**Count 4: Negligence - California Law Applies**
**(v. Mission Aurora Swim Team)**

181.    Plaintiff incorporates all preceding paragraphs as though fully recited herein.

182.    Mission Viejo Colorado (now MACS) owed Plaintiff a duty to, inter alia, protect her from sexual assault by her coach, employ or retain suitable coaches entrusted to the care of this minor, institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct by coaches, to report to the legal authorities any reasonable suspicion of child abuse, and/or to otherwise conduct themselves with due care to avoid injuring Plaintiff.

183.    Mission Viejo Colorado (now MACS) breached said duties by, inter alia, failing to report inappropriate behaviors to the authorities for proper investigation, failing to intervene on Plaintiff's behalf, and/or failing to implement and/or enforce proper policies and procedures for the protection of minor swimmers.

184.    As a legal result of Mission Viejo Colorado (now MACS) acts and/or omissions, Plaintiff sustained injuries and damages as hereinbefore alleged.

**Count 5: Intentional Infliction of Emotional Distress - California Law Applies**
(v. **MacFarland, USA Swimming, Inc., Colorado Swimming, Inc., MVC/MACS**)

**Plaintiff incorporates all preceding paragraphs as though fully recited herein.**

185.    The conduct of said Defendants as herein alleged was outrageous and was so extreme as to exceed all bounds of decency usually tolerated in a civilized community. In, inter alia, permitting a motherless girl to live with her adult male swim coach and

failing to report reasonably suspected incidents of child abuse, said Defendants acted with reckless disregard for the probability that Plaintiff would suffer emotional distress.

186.    In performing such lewd and lascivious acts upon Plaintiff, MacFarland acted with reckless disregard for the probability that Plaintiff would suffer emotional distress.

187.    Further, MacFarland's cruel emotional abuse of Plaintiff was done with the intention of grooming her and causing her mental distress.

188.    As a legal result of the aforementioned acts, Plaintiff suffered severe emotional distress, such as fright, horror, anxiety, humiliation, and mental anguish, causing injury to her mind, spirit, and body, all to her general and special damages well above the jurisdictional minimum of this Court.

189.    Said Defendants have acted despicably and with willful and conscious disregard of the rights of others, and/or have subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights and safety.

190.    Said Defendants are charged with malice and/or oppression, entitling Plaintiff to punitive damages for the sake of example and by way of punishing said Defendants, as hereinbefore alleged.

### Count 6: Negligent Infliction of Emotional Distress-California Law Applies
(v. MacFarland, USA Swimming, Inc., Colorado Swimming, Inc., MVC/MACS,)

191.    Plaintiff incorporates all preceding paragraphs as though fully recited herein.

192.    All Defendants in this action were negligent, as each owed a duty to Plaintiff and all breached that duty, as described in greater detail above.

193.    Defendants' individual and collective negligence created an unreasonable risk of harm to Sarah and caused her to be in constant fear for her safety, security, and personal integrity.

194.    The harm Sarah suffered as a result of Defendants' individual and collective negligence manifested itself in physical harm, including (but not limited to) the sexual abuse of Sarah and her (thankfully unsuccessful) suicide attempts.

195.    The negligent infliction of emotional distress caused Plaintiff to suffer damages in an amount to be determined by a jury.

**Count 7: Unlawful Gender Discrimination in Educational Programs and Activities (20 U.S.C. § 1681(a))**
**(v. Cherry Creek School District 5)**

196.    Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

197.    Defendant MacFarland engaged in a deliberate, continuous, ongoing pattern of sexual harassment and sexual assault against Plaintiff over a period of multiple academic years. Such conduct constituted discrimination based on gender, in violation os 20 U.S.C. § 1681(a).

198.    Defendant Cherry Creek School District 5 was deliberately indifferent to the continuing pattern of sexual harassment and sexual misconduct perpetrated by MacFarland.

199.   Officials within the Cherry Creek School District 5 who had authority to address the alleged discrimination and to institute corrective measures on behalf of the School District (Defendants John Doe 1-50) had actual knowledge of the discrimination and failed to respond adequately.

200.   For example, while Ms. Ehekircher was registered as a student within the School District, she changed her address to that of MacFarland's and he was listed as her "Guardian." No person within the school ever questioned this arrangement or asked for any legal papers supporting the alleged (but legally nonexistent) "guardianship."

201.   The School District could have taken corrective measures to prevent and/or remedy the discriminatory conduct of MacFarland, including, but not limited to, reprimanding him, suspending him from coaching and/or teaching, terminating his employment, monitoring his conduct, prohibiting him from using Cherry Creek Facilities, and/or investigating and reporting MacFarland's conduct to law enforcement officials.

202.   The School District's lack of response to the continuing pattern of sexual harassment and abuse perpetrated by MacFarland was clearly unreasonable in light of the known circumstances (e.g., that a student whose mother had recently died was living with her unrelated teacher/coach).

203.   The School District acted with such deliberate indifference despite having actual knowledge that the harassment was occurring.

204.     The harassment was so severe, pervasive, and objectively offensive that it deprived Ms. Ehekircher of access to the educational opportunities and benefits provided by the school.

205.     As a direct and proximate result of the School District's failings, MacFarland was able to continue to harass and abuse Ms. Ehekircher at his leisure, and she sustained injuries, damages, and losses.

## Count 8: Violation of Rights to Equal Protection and Due Process Under the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)
### (v. MacFarland)

206.     Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

207.     Defendant MacFarland, while acting under color of state law, engaged in a persistent pattern of sexual harassment, sexual assault, and sexual misconduct against Ms. Ehekircher.

208.     Defendant MacFarland's actions deprived Ms. Ehekircher of her right to equal protection under the law and due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

209.     As a direct and proximate result of MacFarland's unconstitutional conduct, Ms. Ehekircher sustained injuries, damages, and losses.

## Count 9: Failure to Investigate and Report (42 U.S.C. § 1983)
### (v. John Does 1-50, in their individual capacities)

210.     Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

211.    MacFarland engaged in a continuing, widespread, and persistent pattern of misconduct, including arranging that the teenaged student he taught and coached move in with him so that he could harass and abuse her at home as well as at the pool and school.

212.    After receiving notice of the conduct, these defendants demonstrated deliberate indifference to and/or tacit authorization of the conduct of MacFarland.

213.    These defendants *knew* that Ehekircher moved in with the MacFarland and did nothing about it.

214.    Defendants' deliberate indifference was both a cause-in-fact and proximate cause of the injuries sustained by Ms. Ehekircher.

### Count 10: Failure to Investigate and Report (42 U.S.C. § 1983)
### (v. Cherry Creek School District 5)

215.    Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

216.    MacFarland engaged in a continuing, widespread, and persistent pattern of misconduct as described above; the misconduct extended across multiple academic years.

217.    Persons with the authority to make policy on behalf of Cherry Creek Schools, currently identified as John Does 1-50, demonstrated deliberate indifference to and/or tacit authorization of MacFarland's conduct.

218.    John Does 1-50 failed to institute or maintain proper corrective measures to respond to constitutional violations such as those perpetrated by MacFarland.

219.     Such deliberate indifference was sufficiently pervasive and widespread so as to constitute an official policy or custom of Cherry Creek School District 5.

220.     Cherry Creek School District 5's deliberate indifference was both a cause-in-fact and proximate cause of the injuries sustained by Ms. Ehekircher.

### Count 11: Failure to Supervise and Train (42 U.S.C. § 1983)
### (v. John Does 1-50, in their individual capacities)

221.     Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

222.     Defendants John Does 1-50 knew that employees of Cherry Creek Schools would encounter situations in which interactions between students and teachers revealed and/or suggested the presence of harassment, intimidation, and/or inappropriate sexual contact between employees and students, in violation of students' rights under the 14th Amendment to the US Constitution.

223.     Despite the substantial risk posed by such interactions, Defendants John Does 1-50 failed to train employees to recognize and/or report such indica of harassment, intimidation, and/or inappropriate sexual contact, and failed to report such incidents when Defendants witnessed them or knew them to be occurring.

224.   Defendants' unconstitutional conduct amounted to deliberate indifference to Plaintiff's constitutional rights and demonstrated deliberate indifference or tacit authorization of MacFarland's offensive acts.

225.   As a direct and proximate result of these defendants' unconstitutional customs and practices, Ms. Ehekircher sustained injuries, damages, and losses.

### Count 12: Failure to Supervise and Train (42 U.S.C. § 1983) (v. Cherry Creek School District 5)

226.   Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

227.   Policymakers acting on behalf of Cherry Creek School District 5 knew that employees of Cherry Creek Schools would encounter situations in which interactions between students and teachers revealed and/or suggested the presence of harassment, intimidation, and/or inappropriate sexual contact between employees and students, in violation of students' rights under the 14th Amendment to the US Constitution.

228.   Despite the substantial risk posed by such interactions, Defendant Cherry Creek School District 5 had in place an unconstitutional custom or practice of failing to train employees to recognize and/or report such indicia of harassment, intimidation, and/or inappropriate sexual contact (such as, a student suddenly changing her address to match that of an unrelated, single, male employee).

229.   Defendant Cherry Creek Schools' unconstitutional custom or practice represented deliberate indifference to Ms. Ehekircher's constitutional rights.

230.    Defendant Cherry Creek Schools' unconstitutional custom or practice was a moving force behind the violation of Plaintiff's constitutional rights.

231.    As a direct and proximate result of Cherry Creek School District 5's unconstitutional customs and practices, Ms. Ehekircher sustained injuries, damages, and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.  For all special and all other economic damages according to proof;

2.  For general damages and other non-economic relief, according to proof;

3.  For loss of earning capacity, according to proof;

4.  For prejudgment interest, as allowed by law;

5.  For reasonable attorney's fees against all defendants under Colorado Code of Civil Procedure §13-17-102;

6.  For reasonable attorney's fees against defendant MacFarland under Colorado Code of Civil Procedure §13-17-102.02; and for fees under 42 USC 1988 or any other applicable fee shifting statute.

7.  For punitive damages, as according to proof and allowed by law;

8.  For costs of suit herein; and,

9.  For such other and further relief as the court may deem fit and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Dated:  December 27, 2022

Respectfully submitted:

*/s/ Annemarie Alonso*
Annemarie Alonso (CO Bar #52027)
Jonathan Little
Gabrielle Olshemski
Saeed and Little, LLP
133 W. Market St., #189
Indianapolis, IN 46204
317-721-9214
jon@sllawfirm.com
annie@sllawfirm.com
gaby@sllawfirm.com