**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| Sarah Ehekircher, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Case No. 1:22-cv-3322 |
| | ) | |
| United States Swimming, Inc., | ) | |
| Colorado Swimming, Inc., | ) | |
| Mission Aurora Colorado Swim Team, | ) | |
| James Scott MacFarland, | ) | |
| Cherry Creek School District 5, | ) | |
| Cherry Creek School District 5 | ) | |
| Employees 1-50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND

---

Comes now Plaintiff Sarah Ehekircher, by counsel, and for her Second Amended

Complaint for Damages against Defendants, states as follows:

### INTRODUCTION

Sarah Ehekircher is a former student-athlete who excelled in swimming and

dreamt of competing in the Olympics. After the death of her mother and subsequent

abandonment by her alcoholic father, her coach, James Scott MacFarland, took

advantage of her vulnerable state and groomed and emotionally abused her for his own

sexual gratification. USA Swimming-certified coach MacFarland coached Sarah for the

Mission Viejo (Colorado) (which became the Mission Aurora Colorado Swim Team).

1

MacFarland, with the full awareness of the Cherry Creek School District, had Sarah move into his apartment while she was still a minor.

Coach MacFarland raped Sarah for the first time in the summer of 1986 when she was at swim meet in Southern California. He continued to coerce Sarah into sex, leveraging the lodging he provided her, to induce her to sexually service him. This abuse continued for years, and Sarah carried the emotional scars resulting from the trauma for many more. James Scott MacFarland, USA Swimming, Colorado Swimming, the Mission Aurora Colorado swim team, and the Cherry Creek School District all actively abused and/or failed to act to protect Sarah, and the corporate defendants (the Swimming Defendants the Cherry Creek School District) benefitted from their relationships with Sarah's abuser.

## PARTIES

1.  Sarah Ehekircher is a natural person and a citizen of the United States. She currently resides in Seattle, Washington. She may be served through counsel, whose contact information appears below.

2.  Defendant United States Swimming, Inc ("USA Swimming") is a Colorado Corporation, with its principal place of business at 1 Olympic Plaza, Colorado Springs, Colorado 80909. It may be served through its registered agent: InCorp. Services Inc., 36 South 18th Avenue, Brighton, Colorado 80601.

3.  Defendant Colorado Swimming is a Colorado Corporation and can be served via its registered agent, Jackie Stiff, PO Box 904 Eastlake, Colorado 80614.

Colorado Swimming's physical address per the Colorado Secretary of State is 14185 Forest Street Thornton, Colorado 80602.

4.     Colorado Swimming is a Local Swim Committee ("LSC") of United States Swimming.

5.     LSCs act for USA Swimming in their respective geographic areas, administering swim meets, tracking results, ensuring that only USA Swimming Coaches are permitted on pool deck.

6.     LSCs carry out the business and operations of USA Swimming in their respective geographic areas.

7.     https://www.usaswimming.org/about/lsc-websites  is a listing of the respective LSCs across the United States and respective territories.

8.     Colorado Swimming and USA Swimming are insured on the same commercial general liability policies.

9.     Colorado Swimming is a d/b/a entity of USA Swimming.

10.     Colorado Swimming and USA Swimming are insured on the same sexual abuse insurance policies.

11.     Defendant James Scott MacFarland ("Coach MacFarland") was last known to be living in Houston, Texas coaching at the Magnolia Aquatic Club. His current whereabouts are unknown.

12.     Plaintiff will serve MacFarland via personal service.

13.     Mission Aurora Colorado Swim Team ("MACS") is a Colorado Corporation. It is the successor in interest to the Mission Viejo Swim Club in Colorado. It may be served through its registered agent, Andrew J. Neimann at 19951 E. Radcliffe Pl, Centennial, CO 80015-5414.

14.     Mission Viejo Colorado was a swim team that was located in Aurora, Colorado.

15.     In 1989, the Mission Viejo subdivision no longer wanted the Mission Viejo Swim team to use the Mission Viejo name.

16.     As a result, in 1989, the Mission Viejo Colorado swim team became Mission Aurora Colorado Swim Team .

17.     MACS is a d/b/a entity of USA Swimming. It is sometimes referred to herein as MVC/MACS to denote its status as a successor entity to MVC.

18.     Cherry Creek School District 5 is a public school district based in western Arapahoe County, Colorado. It may be served through its District Office, at 4700 South Yosemite Street, Greenwood Village, Colorado 80111.

19.     Smoky Hill High School is and was a high school in the Cherry Creek School District.

20.     John Doe School District Employees 1-50 is a placeholder for those Cherry Creek School District 5 employees whose identities are yet to be discovered but who knew, or should have known, that MacFarland, who coached swimming at Cherry Creek facilities, was sexually harassing and abusing young students, including Sarah

Ehekircher, and who did not report him, intervene, or otherwise take any actions to protect children and youth against him.

## JURISDICTION AND VENUE

21.     This Court has original subject matter jurisdiction of the federal questions presented herein under 28 U.S.C. § 1331 and Title IX of the Education Amendments of 1972.

22.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Ms. Ehekircher's state law claims.

24.     Venue in this Court is proper under 28 U.S.C. § 1391(b), for many of the events or omissions giving rise to these claims arose in this District.

## FACTS

25.     Sarah Ehekircher was born in 1968.

26.     Sarah started swimming at the age of 12.

27.     By the time Sarah was 14, she was one of the top breaststrokers in Colorado.

28.     Except for one semester of her sophomore year of high school when she lived in Ohio, Sarah swam for the Mission Viejo Conquistadores a/k/a Mission Viejo Colorado.

29.     In 1982, when Sarah was 13, her mother died of cancer.

30.    Her father began to struggle with alcoholism when Sarah was in her early teens.

31.    Following her mother's death, swimming became Sarah's outlet and was (initially) a safe place for her emotionally and physically.

32.    Sarah doubled down on her commitment to the sport and her increased dedication resulted in improved performances.

33.    The Mission California Swim team was and is one of the most successful club swim programs in the United States.

34.    At some point in the 1980s, Mission Viejo created a Colorado branch of its swim club, which Sarah joined.

35.    As explained above, Mission Viejo – Colorado ("MVC") eventually became Mission Aurora Colorado Swim Team ("MACS").

36.    MACS still operates a club swimming program to this day.

37.    MVC was affiliated with United States Swimming (the National Governing Body or "NGB") and Colorado Swimming (the Local Swimming Committee or "LSC").

38.    Sarah's swim coach at MVC was Defendant MacFarland.

39.    At all relevant times, MacFarland was a swim coach certified by Defendant United States Swimming.

40.    The Swimming Defendants (USA Swimming, Colorado Swimming, MACS) benefitted from their relationship with MacFarland by, for example, the dues or fees he paid to be a member coach and the revenue they received in relation to swim meets and successful swimming competition results.

41.     Coach MacFarland had been recruited by Mark Schubert to coach the Colorado extension of the Mission Viejo Nadadores program.

42.     Schubert was aware that Coach MacFarland and his other young male assistant coaches had a practice of wearing short running shorts without underwear while stretching girls at Mission Viejo practices.

43.     Coach MacFarland and his USA Swimming-certified peers wore short running shorts ("Dolphin shorts") while stretching girls.

44.     Coach MacFarland and his USA Swimming-certified peers wore short running shorts while stretching girls so the girls would have a clear view of their testicles and penises.

45.     Coach MacFarland and other Mission Viejo coaches would stretch their legs on the starting blocks while wearing Dolphin shorts to expose their genitals to the children they coached.

46.     By 1986, USA Swimming, its LSCs, and the member clubs of USA Swimming were not able to purchase commercial general liability insurance on the open insurance market.

47.     By 1986, in order to purchase insurance USA Swimming had to pay "one million dollars, for one million dollars of coverage."

48. USA Swimming, its LSCs, and member clubs were not able to purchase commercial insurance on the open market because of the high incidence of child sexual abuse in USA Swimming[1].

49. In 1986, USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (now Defendant "MACS") had no policies or procedures prohibiting sexual relations between coaches and the young athletes they coached.

50. USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (now Defendant MACS) did not prohibit sexual relationships between coaches and athletes until 2013.

51. In 1986, USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (now Defendant MACS) had no policy prohibiting coaches from living with the children they coached.

52. In 1986, USA Swimming, Colorado Swimming, and the Mission Viejo Nadadores (Now Defendant MACS) had no policy prohibiting male coaches from living with the female minors they coached.

53. During the 1985-86 school year, MacFarland was Sarah's coach at MVC (now MACS).

54. Coach MacFarland was aware that Sarah's mother had passed away.

---

[1] Through at least 2020 USA Swimming member clubs purchase their insurance as USA Swimming doing business as the NAME OF CLUB.

55.     Coach MacFarland began to take an "interest" in Sarah outside of her swimming.

56.     Coach MacFarland asked Sarah personal questions about her home and dating life.

57.     Coach MacFarland knew that Sarah's father was struggling with his wife's death and was drinking excessively.

58.     At all relevant times, Sarah was enrolled in Cherry Creek School District 5 ("Cherry Creek Schools").

59.     At some point Coach MacFarland was an employee of the Cherry Creek Schools or was otherwise affiliated with Cherry Creek Schools.

60.     MacFarland assisted Mike Mason and Don Hill as a swim coach with the Cherry Creek School District, coaching in some capacity at Smoky Hill High School.

61.     Cherry Creek Schools had actual knowledge that Sarah was living with Coach MacFarland when she was a minor.

62.     While a student at Smoky Hill, Scott MacFarland's address was listed on Sarah's school records.



63.     Cherry Creek Schools knew or should have known that Sarah was not MacFarland's child.

64.     Cherry Creek Schools knew or should have known MacFarland's address.

65.     Cherry Creek Schools rented pool space to MacFarland.

66.     MacFarland was a swim coach for Smoky Hill High School.

67.     Cherry Creek Schools benefitted from its relationship with MacFarland by, for example, receiving rents from him.

68.     Cherry Creek Schools knew or should have known that MacFarland had no legal custody over Sarah.

69.     Upon information and belief, Cherry Creek Schools did nothing to protect Sarah despite having actual knowledge that she was living with an adult male that was not her father or legal guardian.

70.     The potential harm of an adult male living with a minor female who is not biologically or legally related is obvious.

71.     Cherry Creek Schools had a duty to enact policies and procedures to protect its students.

72.     Cherry Creek Schools breached its duty to protect Sarah.

73.     Coach MacFarland had Sarah move into his one-bedroom apartment in Aurora, Colorado when Sarah was a seventeen-year-old (17) junior in High School.

74.     Despite actual knowledge that Sarah, a student under 18, was living with adult male James Scott MacFarland, Cherry Creek Schools took no actions to protect Sarah.

75.     Coach MacFarland began traveling with Sarah to swim competitions in Colorado and in other states.

76.     Coach MacFarland traveled to swimming competitions with Sarah in the summer of 1986.

77.     Coach MacFarland took no steps to conceal his "relationship" with Sarah.

78.     Coach MacFarland's "relationship" with Sarah was openly discussed among employees at Smoky Hill.

79.     Coach MacFarland and Sarah traveled, at MacFarland's expense, to the Irvine AA (older)[2] swim meet in Irvine, California in July 1986.

80.     For the first part of the meet, Sarah stayed with Shannon Hair, another junior athlete.

---

[2] AA was a minimum time standard needed to enter the meet and older referred to athletes over the age of 13.

81.     When Shannon was done competing, she left the meet and Coach MacFarland moved into the room that Sarah still occupied.

82.     At the hotel room they shared in Irvine, California, Coach MacFarland raped Sarah for the first time; she was 17.

83.     The age of consent in California (in 1986 and today) is 18.

84.     Sarah did not turn 18 until December 1986.

85.     After the meet in Irvine concluded, Sarah and Coach MacFarland traveled to a meet in Austin, Texas.

86.     Sarah and Coach MacFarland had sexual intercourse in Texas in the summer of 1986.

87.     Sarah and Coach MacFarland had sex in his car in Arizona in the summer of 1986.

88.     Bob and Kathy Gillett coached a USA Swimming club, Arizona Sports Ranch, in Paradise Valley, Arizona.

89.     Sarah and the three prominent USA Swimming Coaches (Scott, Bob, and Kathy) traveled on to Arizona where Sarah and Scott shared a bed at the Gillett family home in Phoenix, Arizona.

90.     Sarah and Coach MacFarland had sex in the Gillett's home in Paradise Valley, Arizona in the summer of 1986.

91.     Bob and Kathy Gillett knew how old Sarah was in the summer of 1986.

92.     Bob and Kathy Gillett knew Sarah was not 18 years old in the summer of 1986.

93.     In 1986, the age of consent in Arizona was 18 years old (as it is today).

94.     Sarah and Scott traveled to Las Vegas, Nevada in the summer of 1986 with USA Swimming coaches, Bob and Kathy Gillett.

95.     Sarah and Scott shared a hotel room in Las Vegas; however, the age of consent in Nevada in 1986 was 16.

96.     Upon returning to Colorado for the start of school, Sarah was coerced into sexual acts Coach MacFarland countless times at his apartment between August 1986 and her graduation in the spring of 1987.

97.     The MACS Swim Team, then known as Mission Viejo Colorado, was aware that Sarah was living with Coach MacFarland before she went to Irvine in the summer of 1986.

98.     The MACS Swim Team, then known as Mission Viejo Colorado, discussed Sarah and Scott living together at board meetings in 1986 before Sarah traveled to Irvine with Coach MacFarland.

99.     The MACS Swim Team, then known as Mission Viejo Colorado, was aware that Sarah was traveling to California with Coach MacFarland in the summer of 1986.

100.    It was common knowledge on the MACS Swim Team that Coach MacFarland and Sarah were living together in 1986.

101.    It was commonly known in the MACS Swim program that Sarah was a minor in 1986.

102.    The MACS Swim Team had no policies or procedures regarding appropriate coach-minor athlete relationships.

103.    The MACS Swim Team had no policies or procedures prohibiting

  a.  Coach – Athlete sex

  b.  Coach – sex with minors

  c.  Adult male coaches sharing hotel rooms with minors

  d.  Coaches from living alone with minor members they coached.

104.    The culture of USA Swimming and its LSCs, including Colorado Swimming, have long enabled and turned a blind eye to adult male coaches having sex with the young girls they coach.

105.    As reported by the Orange County Register in February 2018, literally hundreds of USA Swimming coaches have engaged in sexual relationships with the young athletes they coached since the organization's inception in 1978.[3]

106.    It was not noteworthy or unusual that Coach MacFarland was having sex with a minor swimmer.

---

[3] Scott Reid, 100s of USA Swimmers Were Abused for Decades, The Orange County Reg., Feb. 16, 2018,  https://www.ocregister.com/2018/02/16/investigation-usa-swimming-ignored-sexual- abuse-for-decades/.

107.     It was this very culture that allowed Coach MacFarland to openly "date" and live with Sarah in 1986.

108.     Sarah and Scott had sex in Arizona, California, Texas, and Nevada before returning to Colorado for the start of Sarah's senior year of high school in 1986.

109.     Coach MacFarland lived with Sarah in his one-bedroom apartment while she was a high school student.

110.     Cherry Creek Schools knew that Sarah was living with Coach MacFarland, while Sarah was a Smoky Hill student.

111.     Cherry Creek Schools took no steps to verify whether Scott MacFarland was indeed Sarah's guardian.

112.     Coach MacFarland continued emotionally and sexually abusing Sarah.

113.     Coach MacFarland kept a scale in his kitchen and insisted Sarah weigh herself before she ate; he regularly forced her to ride a stationary bike for at least two hours after swim practice.

114.     MacFarland's address at E Stanford Ave, Aurora, CO 80015 is listed on Sarah's Smoky Hill school records.

115.     In reality, Coach MacFarland was not Sarah's "guardian;" he was her rapist and abuser.

116.     In USA Swimming, Colorado Swimming, and MACS social circles, Sarah and Coach MacFarland openly "dated."

117.    Staff and employees, particularly in the athletic department knew that Coach McFarland and Sarah were dating.

118.    MacFarland constantly demanded sexual services from Sarah.

119.    MacFarland leveraged the fact he was providing food and shelter to Sarah, who had nowhere else to go, in exchange for sexual services.

120.    Because she lived with him and was dependent on him for her basic needs, including food and shelter, Sarah was subject to MacFarland's beck and call.

121.    Because she lived with him and was dependent on him for her basic needs, including food and shelter, Sarah was forced to sexually service MacFarland whenever he wanted.

122.    Because she lived with him and was dependent on him for her basic needs, including food and shelter, Sarah was forced to labor for MacFarland's personal gratification.

123.    MacFarland became jealous when Sarah received attention from peers her age.

124.    MacFarland prohibited Sarah from engaging in normal youth activities, like attending dances and dating her peers.

125.    Coach MacFarland refused to let Sarah take part in high school milestones, such as having her senior pictures taken.

126.    Coach MacFarland would spend hours video-taping Sarah, and then force her to spend hours watching herself on VHS with him.

127.     Coach MacFarland would often videotape Sarah swimming alone for hours, and then force her to watch the tapes of herself swimming while he critiqued every stroke, kick, and turn.

128.     These sessions would sometimes last up to six hours.

129.     Despite enduring constant sexual and emotional abuse from her USA Swimming certified-coach while still a teenager, Sarah continued to swim well during her senior of high school.

130.     By the end of her senior year in May 1987, Sarah had not committed to a college.

131.     Sarah moved to San Diego in May 1987 and swam for Rick Shipperd.

132.     In July 1987, Sarah returned to Colorado and resumed swimming for Mission Viejo and Coach MacFarland.

133.     Sarah swam for the Mission Viejo Colorado at USA Swimming Junior Nationals in Mission Viejo, California in July 1987.

134.     As a result of her performance at that meet, Sarah was offered a scholarship to the University of Arkansas.

135.     Sarah chose to attend the University of Arkansas.

136.     After she relocated to Fayetteville, Arkansas, Coach MacFarland constantly harassed Sarah, demanding to know her whereabouts and with whom she was spending her time.

137.     When Sarah came home for Thanksgiving, Coach MacFarland coerced Sarah into sex.

138.     Scott impregnated Sarah for the first time around the end of November 1987.

139.     She was 18 years old.

140.     Sarah aborted the pregnancy in January 1988.

141.     Coach MacFarland continued to pressure and harass Sarah through the remainder of her freshman year at the University of Arkansas.

142.     Sarah left school during the beginning of her second semester, and never returned.

143.     Sarah left the University of Arkansas and moved back to Colorado to live with Coach MacFarland.

144.     Sarah retired from competitive swimming in 1993.

145.     Sarah was impregnated twice within eight months of the first abortion.

146.     In 1988, Sarah had two abortions for pregnancy caused by Scott MacFarland.

147.     Sarah last had sex with James Scott MacFarland in 1993.

148.     Sarah's "relationship" with Coach MacFarland had been well known in USA Swimming circles since it started when Sarah was 17.

149.     Numerous times during the last 30+ years, Sarah has made formal and informal complaints to USA Swimming about Coach MacFarland.

150.    In 2010, USA Swimming convened a Board of Review in Dallas, Texas to adjudicate Sarah's allegations against Coach MacFarland.

151.    John Morse, USA Swimming's former counsel, was the "chair" a/k/a "Judge" for the Board of Review.

152.    USA Swimming's outside counsel, Bryan Cave, "prosecuted" Sarah's allegations against James Scott MacFarland.

153.    Bryan Cave also served as USA Swimming counsel defending sexual abuse civil cases across the United States until 2015 or 2016.

154.    Under oath, Sarah testified that James Scott MacFarland first had sex with her in July 1986 at a hotel in Orange County, California.

155.    Under oath, James Scott MacFarland admitted to having a sexual relationship with Sarah when he was her coach but denied having sex with her in California in 1986.

156.    USA Swimming claims they are unable to find meet results from the Irvine meet in 1986 or the meet from Austin in 1986.

157.    USA Swimming's Board of Review included a "jury" of three.

158.    As intended, USA Swimming's Dallas Board of Review found that Sarah and Coach MacFarland's sexual relationship started in the summer of 1987 not the summer of 1986.

159.     USA Swimming or the Center For Safe Sport[4] or both have provided the inaccurate date of 1987 as the commencement of sexual activity between Coach MacFarland and Sarah to law enforcement.

160.     As a result of being raped at a young age and during a vulnerable time, Sarah has suffered extreme emotional distress.

161.     As a result of her emotional distress, Sarah has been hospitalized with depression.

162.     Sarah has made three suicide attempts.

163.     Over the last 30+ years, USA Swimming has contributed to Sarah's distress.

164.     USA Swimming has sought to discredit Sarah to protect the reputation of the USA Swimming, the Mission Viejo Swim teams, Mark Schubert, and to a lesser extent, Coach MacFarland.

165.     USA Swimming has withheld evidence, namely meet results and transcripts from Sarah, to prevent Sarah from proving the allegations underlying this complaint.

---

[4] The Center for Safe Sport is an organization in Denver, Colorado that is completely reliant on funding from the United States Olympic Committee and National Governing Bodies like United States Swimming. The Center For Safe Sport is designed to "investigate" claims of sexual abuse in Olympic Sports and then mitigate the civil and criminal liability of the USOC and National Governing Bodies upon whom it relies for funding.

166.    Upon information and belief, in 2018 or 2019 the US Center for Safe Sport opened an investigation into Sarah's allegations against James Scott MacFarland.

167.    Upon information and belief, USA Swimming did not provide meet results that could have corroborated Sarah's participation in the 1986 Irvine and Austin swim meets.

168.    The Center for Safe Sport closed its investigation into Coach MacFarland in 2019 for reasons not currently known to Plaintiff.

169.    Upon information and belief USA Swimming or the Center for Safe Sport provided inaccurate information to law enforcement in California.

## CAUSES OF ACTION

### Count 1: Sexual Battery of a Minor - California Law Applies
### (v. James Scott MacFarland)

170.    Plaintiff hereby incorporates all foregoing paragraphs as though fully recited herein.

171.    At all relevant times, Defendant MacFarland was a USA Swimming approved, certified, and/or registered swim coach for the USA Swimming sanctioned and certified club the Mission Viejo Colorado entrusted with the care of Plaintiff as her swim coach. MacFarland owed Plaintiff a duty to conduct himself appropriately so as not to inflict harm upon her. At all relevant times, said Defendant was employed, retained, and/or acting as the agent for USA Swimming, and/or Mission Viejo Colorado

172.     Commencing in or around 1985-86, MacFarland used his position of trust and authority as Plaintiff's coach to groom plaintiff for his sexual gratification and/or committed lewd and lascivious acts upon Plaintiff and/or sexually abused, molested, and impermissibly touched Plaintiff.

173.     As a legal result of the foregoing, Plaintiff was injured in health, strength, and activity, sustaining bodily injuries and shock and injury to her nervous system and person, all of which caused and continue to cause plaintiff great mental, physical and nervous pain and suffering; Plaintiff has thereby sustained damages in an amount to be determined by a jury.

174.     As a further legal result of the conduct of MacFarland, Plaintiff was required to and did employ health care providers for examination, counseling, treatment, and care, and incurred, and will continue in the future to incur, medical and incidental expenses, including counseling costs, the exact amount of which is unknown to Plaintiff at this time.

175.     As a further legal result of the conduct of MacFarland, Plaintiff was prevented from working and/or suffered a loss of earning capacity. Plaintiff is informed and believes and thereon alleges that her inability to work and/or reduction in his earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning capacity, the exact amount of which is unknown to Plaintiff at this time.

176.    Plaintiff herein anticipates serving upon MacFarland an offer to compromise under Colo. R. Evid. 408 and Colorado Civil Code §13-21-101, and upon such service of said offer, is entitled to interest on the amount of any judgment obtained in favor of Plaintiff, provided said judgment exceeds the amount stated in the said offer, said interest to be computed from the date of service of the said offer to compromise.

177.    The acts of Defendant MacFarland perpetrated upon Plaintiff were intentional, malicious, and/or oppressive, entitling Plaintiff to punitive damages against the said defendant under Colorado Civil Code §13-21-102.

### Count 2: Negligence - California Law Applies
### (v. United States Swimming, Inc. and Colorado Swimming, Inc.)

178.    Plaintiff incorporates all preceding paragraphs as though fully recited herein.

179.    USA Swimming owed Plaintiff a duty to, inter alia, protect her from sexual assault by her coach, employ or retain suitable coaches entrusted to the care of this minor, institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct by coaches, to report to the legal authorities any reasonable suspicion of child abuse, and/or to otherwise conduct themselves with due care to avoid injuring Plaintiff.

180.    USA Swimming breached said duties by, inter alia, failing to report inappropriate behaviors to the authorities for proper investigation, failing to intervene

on Plaintiff's behalf, and/or failing to implement and/or enforce proper policies and procedures for the protection of minor swimmers.

181.    As a legal result of USA Swimming's acts and/or omissions, Plaintiff sustained injuries and damages as hereinbefore alleged.

## Count 3: Negligence - California Law Applies
### (v. MVC/MACS)

182.    Plaintiff incorporates all preceding paragraphs as though fully recited herein.

183.    Mission Aurora Swim Team (formerly Mission Viejo – Colorado) owed Plaintiff a duty to, inter alia, protect her from sexual assault by her coach, employ or retain suitable coaches entrusted to the care of this minor, institute and enforce appropriate policies, procedures, rules, regulations, and requirements necessary to prevent inappropriate sexual conduct by coaches, to report to the legal authorities any reasonable suspicion of child abuse, and/or to otherwise conduct themselves with due care to avoid injuring Plaintiff.

184.    Mission Aurora Swim Team (formerly Mission Viejo – Colorado) breached said duties by, inter alia, failing to report inappropriate behaviors to the authorities for proper investigation, failing to intervene on Plaintiff's behalf, and/or failing to implement and/or enforce proper policies and procedures for the protection of minor swimmers.

185.     As a legal result of Mission Aurora Swim Team's (formerly Mission Viejo – Colorado's) acts and/or omissions, Plaintiff sustained injuries and damages as hereinbefore alleged.

### Count 4: Intentional Infliction of Emotional Distress - California Law Applies
(v. MacFarland, USA Swimming, Inc., Colorado Swimming, Inc., MVC/MACS)

186.     Plaintiff incorporates all preceding paragraphs as though fully recited herein.

187.     The conduct of said Defendants as herein alleged was outrageous and was so extreme as to exceed all bounds of decency usually tolerated in a civilized community. In, inter alia, permitting a motherless girl to live with her adult male swim coach and failing to report reasonably suspected incidents of child abuse, said Defendants acted with reckless disregard for the probability that Plaintiff would suffer emotional distress.

188.     In performing such lewd and lascivious acts upon Plaintiff, MacFarland acted with reckless disregard for the probability that Plaintiff would suffer emotional distress.

189.     Further, MacFarland's cruel emotional abuse of Plaintiff was done with the intention of grooming her and causing her mental distress.

190.     As a legal result of the aforementioned acts, Plaintiff suffered severe emotional distress, such as fright, horror, anxiety, humiliation, and mental anguish, causing injury to her mind, spirit, and body, all to her general and special damages well above the jurisdictional minimum of this Court.

191.    Said Defendants have acted despicably and with willful and conscious disregard of the rights of others, and/or have subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights and safety.

192.    Said Defendants are charged with malice and/or oppression, entitling Plaintiff to punitive damages for the sake of example and by way of punishing said Defendants, as hereinbefore alleged.

### Count 5: Negligent Infliction of Emotional Distress-California Law Applies
### (v. MacFarland, USA Swimming, Inc., Colorado Swimming, Inc., MVC/MACS,)

193.    Plaintiff incorporates all preceding paragraphs as though fully recited herein.

194.    All Defendants in this action were negligent, as each owed a duty to Plaintiff and all breached that duty, as described in greater detail above.

195.    Defendants' individual and collective negligence created an unreasonable risk of harm to Sarah and caused her to be in constant fear for her safety, security, and personal integrity.

196.    The harm Sarah suffered as a result of Defendants' individual and collective negligence manifested itself in physical harm, including (but not limited to) the sexual abuse of Sarah and her (thankfully unsuccessful) suicide attempts.

197.    The negligent infliction of emotional distress caused Plaintiff to suffer damages in an amount to be determined by a jury.

### Count 6:  Action for Relief for Violation of 18 U.S.C. § 1589
### Pursuant to 18 U.S.C. § 2255
### (v. All Defendants)

198.    Plaintiff incorporates all proceeding paragraphs as though fully recited herein.

199.    MacFarland obtained the labor and services of Sarah by causing her to move in with him and making her entirely dependent on him for such basic needs as food and shelter.

200.    Through his actions, MacFarland intended Sarah to believe that, if she did not labor for or service MacFarland, she would lose access to food and shelter.

201.    MacFarland physically restrained Sarah within the confines of his apartment.

202.    MacFarland restrained Sarah from having social contact with her peers.

203.    MacFarland threatened to interfere with Sarah's college recruitment and scholarships if she didn't service him.

204.    MacFarland's actions violated 18 U.S.C. § 1589(a), which prohibits forced labor.

205.    Cherry Creek Schools knowingly benefitted from its relationship with MacFarland by, among other things, receiving rent from him to use its pool.

206.    Cherry Creek Schools knew or were in reckless disregard of the fact that MacFarland was obtaining labor and services from Sarah because, among other things, it knew they shared the same address, it knew he was neither her relation nor legal guardian, it knew she was a minor, and their "dating" relationship was common knowledge.

207.    Cherry Creek Schools' actions and inactions violated 18 U.S.C. § 1589(b).

208.    Cherry Creek School District 5 Employees 1-50 are individuals who, discovery may demonstrate, received particular benefit from a relationship with MacFarland and who knew, or were in reckless disregard of the fact, that he was obtaining labor and services from Sarah because, among other things, they knew they lived together, they knew he was neither her relation nor legal guardian, they knew she was a minor, and their "dating" relationship was common knowledge.

209.    The Swimming Defendants (USA Swimming, Colorado Swimming, MACS) knowingly benefitted from their relationship with MacFarland by, among other things, receiving dues and membership fees from him and receiving revenue related to the results his swimmers attained at swim meets.

210.    The Swimming Defendants knew or were in reckless disregard of the fact that MacFarland was obtaining labor and services from Sarah because, among other things, they knew they lived together, they knew he was neither her relation nor legal guardian, they knew she was a minor, and their "dating" relationship was common knowledge.

211.    The Swimming Defendants' actions and inactions violated 18 U.S.C. § 1589(b).

212.    18 U.S.C. § 2255 provides a civil remedy for personal injuries to individuals who, while minors, were victims of a violation of, *inter alia*, 18 U.S.C. § 1589.

213.    18 U.S.C. § 2256 defines a minor as a person under the age of 18 years, which Sarah was when she moved in with MacFarland and swam under him at high school.

214.    18 U.S.C. § 2255(b) provides that there "shall be no time limit for the filing of a complaint commencing an action under this section."

215.    Under 18 U.S.C. § 2255, civil damages are presumed for violations of 18 U.S.C. § 1589.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.  For all special and all other economic damages according to proof;

2.  For general damages and other non-economic relief, according to proof;

3.  For loss of earning capacity, according to proof;

4.  For prejudgment interest, as allowed by law;

5.  For all damages, fees, and costs permitted and/or required by 18 U.S.C. § 2255(a);

6.  For reasonable attorney's fees against all defendants under Colorado Code of Civil Procedure §13-17-102;

7.  For reasonable attorney's fees against defendant MacFarland under Colorado Code of Civil Procedure §13-17-102.02; and for fees under 42 USC 1988 or any other applicable fee shifting statute.

8.  For punitive damages, as according to proof and allowed by law;

9.  For costs of suit herein; and,

10. For such other and further relief as the court may deem fit and proper.

**JURY DEMAND**

Plaintiff demands a jury on all issues so triable.

Dated: August 14, 2023

Respectfully submitted:

/s/ *Annemarie Alonso*
Annemarie Alonso (CO Bar #52027)
Jonathan Little
Saeed and Little, LLP
8777 Purdue Road
Suite 225
Indianapolis, IN 46268
317-721-9214
annie@sllawfirm.com
jon@sllawfirm.com